**CHICKAMAUGA PROPERTIES, INC., Appellant–Defendant,**

v.

**Hershall BARNARD and Joyce E. Barnard, Appellees– Plaintiffs.**

No. 36A01–0510–CV–444.

Court of Appeals of Indiana.

Aug. 25, 2006.

Rehearing Denied Nov. 21, 2006.

Scott C. Andrews, Coriden Law Office, LLC, Columbus, IN, Attorney for Appellant.

Joseph K. Markel, Markel Markel Lambring & MacTavish, Brownstown, IN, Attorney for Appellees.

## OPINION

MAY, Judge.

Chickamauga Properties, Inc., appeals a judgment in favor of Hershall and Joyce Barnard. Because the trial court correctly determined the Barnards have a prescriptive easement across Chickamauga's property, we affirm.

## FACTS AND PROCEDURAL HISTORY

### Description of Property

This dispute involves three parcels of land, which were part of a 27.779–acre square piece of property ("original tract") sold by the United States in 1956. Parcel 11 is a 6.945–acre square from the southwest corner of the original tract. Chickamauga has owned Parcel 11 since 1997.[1] Parcels 12 and 12.1, located in the southeast corner of the original tract, border Parcel 11. Parcel 12, consisting of 2.967 acres, is a rectangular property east of Parcel 11 on the southern border of the original tract. Parcel 12.1, consisting of 5.65 acres, is a rectangular property located east of Parcel 11 and north of Parcel 12. The Barnards own Parcels 12 and 12.1 (collectively, "the Barnard property"). The northern third of the original tract includes seven additional parcels.[2]

Airport Road runs along the entire western boundary of the original tract; Colonial Drive is an east-west roadway in the northern third of the original tract.[3] A

---

1. A complete chain of title for Parcel 11 was not introduced into evidence.

2. Parcels 10, 13, 14, 14.1, 14.2, 14.3 and 15.

3. Colonial Drive is on Parcel 15 and leads to World War II-era officer housing on Parcel 13 that was converted into an apartment complex. Additional officer housing was located somewhere on the Barnard property.

paved[4] east-west road ("the access road") begins at Airport Road and runs between a bowling alley and its parking lot on Parcel 11. The access road continues east across Parcel 11 and onto the Barnard property along the boundary between Parcel 12 and Parcel 12.1. The access road is about 20 feet wide and located about 50 feet north of the bowling alley. A north-south gravel road runs south from Colonial Drive across Parcel 14.3, which is now owned by the Barnards, and onto Parcel 11, where the gravel road intersects the access road east of the bowling alley. (See illustration.)

### Chain of Title

After leaving government hands, the original 27-acre tract was conveyed in its entirety through various private owners until 1961 when Wesley Dixon, Sr. acquired all but Parcel 11. In 1994, Dixon conveyed Parcel 12 to Roger and Diana Beed.[5] The description of Parcel 12 included "an easement to the above described property to be used as an access to said property from Airport Road." (Ex. 7.) The Beeds conveyed Parcel 12 to their son Kevin Beed in October 2003. The property description included "an Easement/Right of Way to the above described property across the front (North side) of said property 50 feet wide to be used as an access street to said property from Airport Road." (Ex. 9.)

In 2001, the Barnards acquired Parcel 12.1 from Dixon's estate via a tax sale.[6] The Barnards began building a house on Parcel 12.1 in the spring of 2003. In November 2003, the Barnards purchased Parcel 12 from Kevin Beed. This deed included the same easement language as the conveyance to Kevin Beed.

### Use of the Access Road

The bowling alley has been located on Parcel 11 since the 1950s. There has been a paved access road since the 1950s. At least since 1967, visitors to Parcels 12 and 12.1 have used the access road. During the 1970s, Dixon moved a mobile home onto Parcel 12 via the access road. During the late 1970s and early 1980s, the Walker Kennels were located on Parcel 12; a sign on Airport Road directed patrons to the kennels over the access road. During the 1980s and 1990s, the Beeds lived on Parcel 12 and operated a kennel there. For about eight years during the 1990s, a school bus route utilized the gravel road and the western portion of the access road by the bowling alley.

During the summer of 2003, Chickamauga blocked the access road by driving stakes into the road at the boundary between Parcel 11 and the Barnard property. The Barnards removed the stakes after talking with police and consulting a lawyer. Hershall Barnard and George Sutherland[7] discussed the matter at that time. The Barnards moved into their house in December 2003. In January 2004, Chickamauga began building a fence across the access road along its eastern property line. The Barnards sought a permanent injunction to prevent Chickamauga from blocking their access to their property.[8]

---

4. At trial, the paving was described as old.

5. Dixon conveyed Parcel 12 and Parcel 12.1 to the Beeds, but Parcel 12.1 was returned to Dixon's estate in 1996 after the court determined that conveyance was fraudulently induced.

6. The tax sale was held in October 2000. The tax deed was issued on December 31, 2001, following the one-year redemption period.

7. Sutherland and his wife own Chickamauga.

8. The parties agreed Chickamauga would take no further action to block the access road until the matter had been resolved.

After a bench trial on August 19, 2005, the trial court entered findings and conclusions, determining, *inter alia,* the use of the access road had ripened into a prescriptive easement at some point in the early 1990s.[9]

## DISCUSSION AND DECISION

Chickamauga argues the Barnards did not demonstrate the existence of a prescriptive easement by clear and convincing proof. Chickamauga also argues a previous owner abandoned the easement, and asserts the Barnards did not comply with Ind.Code § 32–21–7–1.[10]

When the trial court enters findings of facts and conclusions of law, its decision will not be set aside unless it is clearly erroneous. *Fraley v. Minger,* 829 N.E.2d 476, 482 (Ind.2005). A judgment is clearly erroneous when there is no evidence supporting the findings, the findings fail to support the judgment, or the trial court applies the wrong legal standard to properly found facts. *Id.* We will not reweigh the evidence nor reassess the credibility of the witnesses before the court. *AmRhein v. Eden,* 779 N.E.2d 1197, 1206 (Ind.Ct. App.2002). Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Id.* We review conclusions of law *de novo.*

In order to determine a finding or conclusion is clearly erroneous, we must be left with the firm conviction that a mistake has been made. *Fraley,* 829 N.E.2d at 482.

### Prescriptive Easement

▇▇ Prescriptive easements "are not favored in the law" and a party claiming a prescriptive easement must meet stringent requirements. *Wilfong v. Cessna Corp.,* 838 N.E.2d 403, 405 (Ind.2005). When the trial court resolved this dispute, a party claiming the existence of a prescriptive easement had to demonstrate "an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right." *Id.*

▇▇ Recently, however, our Indiana Supreme Court synthesized and reformulated the variously stated requirements for the related doctrine of adverse possession under the common law: "[T]he doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration." *Fraley,* 829 N.E.2d at 486. The Court explained each of these elements, noting their relationship with the previous requirements:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary

9. We reject Chickamauga's suggestion the Barnards erred by reciting "the evidence most favorable to the trial court's ruling" in their statement of facts. (Appellant's Reply Br. at 7.) Rather, we note this comports with our standard of review. *See AmRhein v. Eden,* 779 N.E.2d 1197, 1206 (Ind.Ct.App. 2002) (viewing evidence in light most favorable to the judgment).

10. Chickamauga also challenges the trial court's conclusion the access road is the only access to the Barnard property. In doing so, Chickamauga refers to the "vague testimony" from "a few witnesses, several of" whom are related to the Barnards. (Appellant's Br. at 17.) We decline this invitation to reweigh the evidence and reassess the credibility of the witnesses. *See AmRhein,* 779 N.E.2d at 1206 ("We will not reweigh the evidence nor reassess the credibility of the witnesses before the court.") We note the challenged conclusion is supported by the findings and the findings by the evidence. However, whether the Barnards can access their property by another route is not relevant because the easement arose by prescription (adverse use) and not by necessity (landlock).

considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—[T]he claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* The *Wilfong* Court held this "reformulation applies as well for establishing prescriptive easements, save for those differences required by the differences between fee interests and easements." 838 N.E.2d at 406.

The trial court concluded the prescriptive rights "ripened into title at some point in the early 1990s, prior to the time [Chickamauga] took title to its real estate." (App. at 12.) Supporting this conclusion is the following finding with respect to the Barnard property:

13. Wesley R. Dixon mowed and maintained the real estate and moved a double wide mobile home on the real estate as his residence in the early 1970s. He owned the real estate until 1994. At all times during his ownership, Dixon used the [access road] as access to the real

estate. He moved his double wide mobile home to the real estate over [the access road].

(*Id.* at 9.) The chain of title documents and the testimony of William Krieger, who worked for Dixon in the 1960s, support this finding.

■ "Where there has been use of an easement for 20 years which is unexplained, such use will be presumed to be under a claim of right, adverse, and sufficient to establish title by prescription unless that use is contradicted or explained." *Bauer v. Harris,* 617 N.E.2d 923, 927 (Ind. Ct.App.1993), *reh'g denied,*[11] *see also* Ind. Code § 32–23–1–1 (An easement "from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years."). "In other words, a rebuttable presumption that use is adverse arises under those circumstances, and in order to rebut that presumption the owner must explain such use by demonstrating that he merely permitted the claimant to use his land." 617 N.E.2d at 927.

■ On appeal, Chickamauga argues the Barnards' use of the access road "is not inconsistent with use and enjoyment of the real estate by [Chickamauga]" and thus the Barnards cannot prove use of the access road was adverse. (Br. of Appellant at 16.) In support of its assertion, Chickamauga notes Hershall agreed he drove across its property as patrons of the bowling alley do.

Unlike the bowling alley patrons, however, visitors to the Barnard property used both the western portion of the access road by the bowling alley's parking lot and

11. Our Indiana Supreme Court synthesized and rephrased varying common law expressions of the elements of adverse possession "to reflect a simplified articulation" of the

"essence of the common law doctrine." *Fraley v. Minger,* 829 N.E.2d 476, 486 (Ind.2005). The reformulation does not appear to affect the vitality of prior case law.

the portion of the access road east of the bowling alley. The trial court also concluded the owners of Parcel 11 might not have noticed visitors to the Barnard property driving across the parking lot of the bowling alley, but they should have noticed "the existing paved road and persons continuing to drive on through the parking lot eastwardly across the paved drive to [the Barnard property]." (App. at 11.) Such a use is inconsistent with the owner's title.

Because Chickamauga presented no evidence to rebut the presumption Dixon's use of the access road was adverse from the late 1960s to the early 1990s, the trial court correctly concluded Dixon's use of the access road had ripened into a prescriptive easement sometime in the early 1990s.

*Abandonment of Easement*

■■ Once a prescriptive easement has been established, the right vests by operation of law. *Bauer,* 617 N.E.2d at 931. However, Chickamauga asserts:

> The undisputed evidence presented at trial established that [Chickamauga] put a stop to any use of the alleged easement across [Parcel 11] as early as July 28, 2000, and [the Barnards] did not acquire [Parcel 12.1] until December 31, 2001. (App. P. 112–113). Therefore, any alleged easement would have been abandoned in 2000, and it was error for the trial court to find such a prescriptive easement still exists.

(Appellant's Br. at 24.)

Sutherland spoke with the Beeds after a survey of Parcel 11 in 2000 indicated some of their kennels were on Chickamauga's property. He asked the Beeds to move the encroaching kennels and to no longer use the access road to get to Parcel 12. The Beeds moved the kennels, but not all of the supplies, to nearby piece of property they owned at the time.[12] Sutherland testified that, to his knowledge,[13] no one had used the access road from 2000 to 2002.

Chickamauga argues the Beeds abandoned the easement when they did not use the access road during this time. We disagree.

■■ An easement, whether acquired prescriptively by adverse use or expressly in writing, can be abandoned. *Seymour Water Co. v. Lebline,* 195 Ind. 481, 488–89, 144 N.E. 30, 33 (1924), *reh'g denied* 195 Ind. 481, 145 N.E. 764 (1924). An easement "acquired by prescription by continuous use for 20 years" may be deemed abandoned after "nonuser for a like period." [14] *Id.* at 488, 144 N.E. at 33. "[A] complete discontinuance of all use of an easement ... with the intention thereby wholly to abandon it, [constitutes] such a surrender as will terminate the easement. *But an intention to abandon and put an end to it is a necessary element of such abandonment." Id.* at 489, 144 N.E. at 33 (emphasis added). "[M]ere proof of nonuse for a number of years is insufficient to show an intention to abandon." *Southern Ry. Co. v. Board of Comm'rs of Vanderburgh County,* 426 N.E.2d 445, 448 (Ind. Ct.App.1981) (railroad right-of-way).

The record does not reflect intent to abandon. The Beeds may have ceased

---

12. The Beeds moved the kennels to Parcel 14.3, which is north of Parcel 11. The north-south gravel road from Colonial Drive to the access road travels through Parcel 14.3. The Barnards purchased Parcel 14.3 from Kevin Beed at the same time they purchased Parcel 12 from him.

13. Sutherland lives in Georgia.

14. Nonuser is the "failure to exercise a right (such as a franchise or easement), as a result of which the person having the right might lose it." Black's Law Dictionary 1082 (7th ed.1999).

using the access road near the bowling alley on a regular basis after moving the dog kennels in the summer of 2000. However, they continued to store dog carriers and dog food on Parcel 12, requiring them to "go back and forth" over the eastern part of the access road. (Tr. at 43.) The Barnards successfully bid on Parcel 12.1 at the tax sale in October 2000 and Hershall Barnard testified he periodically checked the property prior to building his house in 2003.[15] When the Beeds sold Parcel 12 to Kevin Beed in 2003, the deed included an easement for access to Airport Road. The intermittent use of the access road by the Beeds and the inclusion of an easement in the deed to Kevin Beed suggest they did not intend to abandon the easement. Hershall's periodic checks of the property and use of the access road may have begun as little as three months after Sutherland's conversations with the Beeds regarding the access road, eliminating the possibility of "nonuser for a like period" resulting in abandonment.[16] The easement was not abandoned.

### *Adverse Possession Tax Statute*

 Finally, Chickamauga asserts the Barnards failed to comply with the adverse possession tax statute. When a claimant seeks to establish title to land through adverse possession, Ind.Code § 32–21–7–1 requires the claimant to have paid and discharged all taxes and special assessments due on the land during the adverse possession period. Failure to do

so will defeat the adverse possession claim. "The language of the statute clearly limits it to suits for adverse possession to acquire title to land. We are not aware of any cases which have extended the requirement to suits to establish a prescriptive easement." *Larch v. Larch,* 564 N.E.2d 313, 317 (Ind.Ct.App.1990).

 We have an "obligation to follow and enforce the adverse possession tax statute as enacted." *Fraley,* 829 N.E.2d at 493. Soon after *Fraley,* the *Wilfong* court applied *Fraley*'s reformulation of the elements of adverse possession to prescriptive easements "save for those differences required by the differences between fee interests and easements." *Wilfong,* 838 N.E.2d at 406. However, the *Wilfong* Court did not mention Ind.Code § 32–21–7–1 nor did it suggest it should be interpreted to apply to prescriptive easements as well as adverse possession title actions. We decline Chickamauga's invitation to so interpret the statute.

### CONCLUSION

The trial court correctly concluded Dixon's use of the access road ripened into a prescriptive easement in the early 1990s. The easement was not abandoned by nonuser. The adverse possession tax statute is inapplicable. Accordingly, we affirm.

Affirmed.

SULLIVAN, J., and BAKER, J., concur.

---

**15.** It is not clear from Hershall's testimony precisely when he began checking the property, that is, after the tax sale in October 2000, after receiving the tax deed in December 2001, or after construction of the house began in spring 2003.

**16.** Even if the Barnards did not begin visiting the property until spring of 2003, the period

of nonuser is insufficient to constitute abandonment.