ATTORNEYS FOR APPELLANT
Joseph C. Klausing
Stephanie L. Caldwell
O'Bryan, Brown & Toner, PLLC
Louisville, Kentucky

ATTORNEY FOR APPELLEES
John A. Kraft
Young, Lind, Endres & Kraft
New Albany, Indiana

In the
# Indiana Supreme Court



No. 22S01-1506-PL-401

CELEBRATION WORSHIP CENTER, INC.,  *Appellant (Plaintiff)*,

v.

PATRICK TUCKER AND
CAROLYN P. TUCKER, A/K/A PATTY TUCKER,  *Appellees (Defendants)*.

Appeal from the Floyd Circuit Court
The Honorable J. Terrence Cody, Judge
Cause No. 22C01-1106-PL-948

On Transfer from the Indiana Court of Appeals, No. 22A01-1405-PL-229

**June 29, 2015**

**Dickson, Justice.**

This appeal challenges summary judgment for claimants establishing title to and use of real property by adverse possession and by prescriptive easement. Finding no genuine issue of material fact, we affirm the trial court.

In June 2011, the appellant/plaintiff Celebration Worship Center ("the church") filed a complaint for declaratory judgment, seeking to determine the boundary line between it and the appellees/defendants Patrick and Carolyn P. ('Patty') Tucker (collectively, "the homeowners"), to

determine ownership of its real estate, to allow it to build a fence along the boundary line, and to seek further injunctive relief against the homeowners to cease their "trespass" activities. Appellant's App'x at 8. The church holds the deed to lots 1, 2, and 3 on plat 349 in Floyd County, Indiana. The homeowners hold the deed to lot 4, the adjacent property to the east. Surveys attached to the church's complaint describe a boundary line as "Edge of Gravel," *id.* at 15–16, which appears to refer to the east edge of a gravel driveway along the east border of lot 3.

Although the church has sued both the homeowners, the only titleholder of the disputed real estate is Patty Tucker, who purchased her home from her mother, Bonnie Weathers, who had owned and occupied the property from March 15, 1972, until she conveyed it to Patty by quitclaim deed on November 4, 2003. Organized in 2002, the church took title to its real estate on January 10, 2003, from Resurrection Morning Fellowship, Inc. The church's pastor, David Ledger, began his employment in 2001 and never held an office with Resurrection Morning Fellowship. The boundary control issue arose in 2003—shortly before the homeowners moved in, and the property was surveyed soon after.

The homeowners filed their answer and a counterclaim to the church's complaint for declaratory judgment, arguing they had acquired title to the disputed real estate—the grassy portion along the east side of lot 3 contiguous to the west side of lot 4 (their side yard) and the "edge of the gravel"—by adverse possession, as well as a prescriptive easement over the adjacent gravel driveway along the west edge of the disputed grassy area and contiguous to the gravel parking area of lot 3. After written discovery and depositions, competing motions for summary judgment, and a hearing on said motions, the trial court issued an order on July 16, 2013, denying the church's motion for summary judgment and granting summary judgment in favor of the homeowners on both the adverse possession and prescriptive easement claims. The parties subsequently filed numerous motions to correct errors, for clarification, and for reconsideration.

The church appeals the trial court's July 16, 2013 order as well as its orders clarifying the homeowner's use of the acquired prescriptive easement on January 22, 2014, and April 30, 2014. The Court of Appeals reversed the trial court on both claims, concluding the church, not the homeowners, was entitled to summary judgment. Celebration Worship Ctr., Inc. v. Tucker, 26

2

N.E.3d 1074 (Ind. Ct. App. Jan. 14, 2015) (table).  We now grant transfer and affirm the trial court on both claims.

We review a summary judgment decision *de novo*, applying the same standard as the trial court: summary judgment is appropriate where, drawing all reasonable inferences in favor of the non-moving party, the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Trial Rule 56(C), *quoted in* Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014); Williams v. Tharp, 914 N.E.2d 756, 761 (Ind. 2009).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . or if the undisputed material facts support conflicting reasonable inferences."  Williams, 914 N.E.2d at 761 (internal citations omitted), *quoted in* Hughley, 15 N.E.3d at 1003.  The initial burden is on the party moving for summary judgment to "demonstrate[] the absence of any genuine issue of fact as to a determinative issue."  *Id.* at 761–62 (internal substitution omitted), *quoted in* Hughley, 15 N.E.3d at 1003.

The church appeals the trial court's July 16, 2013 order granting the homeowners' motion for summary judgment on both the adverse possession and prescriptive easement claims.  As such, for the basis of this appeal, the homeowners are the moving party for summary judgment.

**Adverse Possession Claim**

In Fraley v. Minger, this Court discussed and synthesized the common law doctrine of adverse possession:

> [T]he doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration, as follows:
>
> > (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
> >
> > (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the

3

former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

829 N.E.2d 476, 486 (Ind. 2005). The requisite period of time for adverse possession is ten years. *Id.* at 487; *see* Ind. Code § 34-11-2-11. In addition to these elements, our Legislature has added the statutory requirement that "the adverse possessor pay[] all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." Ind. Code § 32-21-7-1.[1] Substantial compliance satisfies this statutory tax payment requirement "where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession." Fraley, 829 N.E.2d at 493.

In their motion for summary judgment, the homeowners argue they took fee simple title to the disputed real estate from their immediate predecessor in title: "Patty's mother, the immediate predecessor in title had already established the necessary time elements of adverse possession and prescriptive easement prior to [the church] ever taking title to its real estate." Appellant's App'x at 144. The church, in contrast, focuses on the homeowners' behavior since 2003 ("the past ten years"), the year both the church and the homeowners took possession of their real estate. Appellant's Br. at 11. We find the homeowners, as the moving party, have met their initial burden of establishing a prima facie case that there is no genuine issue of material fact as to the designated evidence. This evidence, in turn, establishes by clear and convincing proof that the homeowner's immediate predecessor in title adversely possessed and obtained fee simple title to the disputed real estate by operation of law[2] prior to the church ever taking title to its real estate.

---

[1] Indiana Code section 32-21-7-1 was amended, with no substantive change, in 2014.

[2] Once the elements of adverse possession have been established, fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner. Echterling v. Kalvaitis, 235 Ind. 141, 147–48, 126 N.E.2d 573, 576 (1955); Rennert v. Shirk, 163 Ind. 542, 550–51 72 N.E. 546, 549 (1904); Snowball Corp. v. Pope, 580 N.E.2d 733, 734 (Ind. Ct. App. 1991), *trans. not sought*.

Such title by adverse possession was conferred in 2003 to the homeowners, who have maintained their possession.

In their motion for summary judgment, the homeowners also point to designated evidence establishing by clear and convincing proof that they and their predecessor met the statutory tax payment requirement of adverse possession. This evidence includes the sworn affidavits of Weathers and her daughter Patty, stating they each believed in good faith that the taxes they had always paid on their real estate (lot 4) included all the grassy portions of the yard over to the gravel. *See* Appellees' App'x at 49 ("In good faith I always believed the taxes I paid on the Real Estate included all the area of the yard (grass area) over to the gravel."), 58 ("At all times during my ownership of the Real Estate I believe[d] in good faith the taxes we were paying on the Real Estate was for all those portions occupied by the grassy area used as the yard."). These affidavits are corroborated by designated county tax records showing the transfer of ownership from Weathers to her daughter Patty (showing no arrearage in taxes on lot 4) and the homeowners' payment of real estate taxes since. In response, the church does not dispute the payment of the taxes assessed on lot 4. The church even concedes that the homeowners and Patty's mother thought such payments covered the disputed tract. Appellant's App'x at 157.

The church focuses its argument instead on the homeowners' admission that they did not *actually* pay taxes on the disputed real estate. *Id.* Comparing this case to Hoose v. Doody, 886 N.E.2d 83 (Ind. Ct. App. 2008), *trans. denied*, and Flick v. Reuter, 5 N.E.3d 372 (Ind. Ct. App. 2014), *trans. denied*, the church argues that "the Tuckers have offered no evidence as to why they would have believed they paid any taxes on 'lot 3' . . . ." *Id.* at 157. We find both Hoose and Flick distinguishable from the facts of this case. In Hoose, the claimants sought to obtain an entire lot via adverse possession and submitted evidence that claimant's parents had written checks indicating separate payments for Lot 8 and Lot 7, the disputed real estate. 886 N.E.2d at 86. Following a bench trial, the court rejected the claim, and the Court of Appeals affirmed on the basis that the claimants "could not reasonably have believed in good faith that they both owned Lot 7 and did not have to pay taxes on it." *Id.* at 93. In Flick, the trial court granted summary judgment in favor of claimant's adverse possession claim. 5 N.E.3d at 379. With respect

5

to the statutory tax payment requirement, claimant designated her sworn affidavit that she had paid all taxes for the statutory period, believing her assessment included both the disputed real estate and her mobile home. *Id.* at 380. The Court of Appeals reversed the trial court on this issue, however, because the record showed that, at best, claimant had paid taxes on her mobile home[3] for less than half of the statutory period. *Id.* In contrast, the homeowners in the present case argue they and their predecessor have paid all taxes that they reasonably believed in good faith to be due on the disputed real estate because they believed the disputed real estate to be part of the side yard of their lot 4—for which they *actually* paid taxes. This reasonable and good faith belief substantially complies with the statutory tax payment requirement. *See* Fraley, 829 N.E.2d at 493. We conclude that no genuine issue of fact remains and find as a matter of law that the homeowners have satisfied the statutory tax payment requirement.

The homeowners also designated evidence in their motion for summary judgment that established by clear and convincing proof that the homeowners met the common law elements of adverse possession: control, intent, notice, and duration. First, the homeowners argue they have met the element of duration because Patty's mother, the immediate predecessor in title had already established the necessary time elements of adverse possession prior to the church ever taking title to its real estate. Patty's mother owned and occupied the property from March 15, 1972, until she conveyed it to Patty by quitclaim deed. The church took possession of its real estate on January 10, 2003—over thirty years after Patty's mother took possession of her house and surrounding real estate—and does not dispute the statutory time period for adverse possession has run.

Second, in her designated sworn affidavit, Patty's mother clearly expressed her intent to claim full ownership of the disputed real estate superior to the rights of all others:

> During the time period I owned the Real Estate, my neighbors were the Southwest Indiana District Church of the Nazarene, *and at no time was there any question as to my continuous use of the Real Estate over to the gravel*, nor use of the driveway, nor any objection to my maintenance of the driveway and purchase of gravel for the same.

---

[3] Property taxes on "mobile homes" are assessed separately from real estate taxes under Indiana Code section § 6-1.1-7 *et seq*.

6

Appellees' App'x at 49 (emphasis added). Patty's mother added further that: "At no time did I ever ask for permission or consent to use the Real Estate over to the gravel area . . . ." *Id.* at 48.

Third, as evidence of notice, the homeowners again rely on the affidavits of Patty and her mother and point to photographs from the 1980s and a 2004 survey, arguing that their actions with respect to the disputed real estate were sufficient to give at least constructive notice to the legal owner of lot 3 of their intent and exclusive control. The surveyor, William B. Gibson, described the purpose of the survey as follows:

> THE PURPOSE OF THIS SURVEY DRAWING IS TO DESCRIBE THAT PART OF LOT 3 OF PLAT NO. 349, SITUATED ON STATE ROAD 6[4] IN THE TOWN OF GEORGETOWN IN FLOYD COUNTY, INDIANA, **THAT HAS BEEN USED AND RECOGNIZED AS PART OF THE PROPERTY OF THE OWNER OF LOT NO. 4 OF PLAT NO. 349.**

Appellant's App'x at 139; *see id.* at 152 (bold emphasis added by the homeowners). The photographs from the 1980s reflect use of the disputed real estate by Patty and her mother and family, namely the location of the old garage and girls departing for prom.

As evidence of control, the homeowners point to the affidavit of Patty's mother, which includes the following:

> During my ownership of the Real Estate and my use of the gravel drive, I controlled the activities thereon, and even paid for maintenance of the gravel driveway, including purchase of gravel and spreading of the same on the gravel drive, and I continuously maintained my yard over to the gravel, and at no time did the church neighbor cut the grass or do any other maintenance to what was my yard and what is now claimed to be the yard of my daughter.

Appellees' App'x at 48. The affidavit further states:

> During the time period I owned the Real Estate, my neighbors were the Southwest Indiana District Church of the Nazarene, and at no time was there any question as to my continuous use of the Real Estate over to the gravel, nor use of the driveway, nor any objection to my maintenance of the driveway and purchase of gravel for the same.

*Id.* at 49. There is no dispute that the boundary control issue arose in 2003—shortly before the homeowners moved in, and the property was surveyed soon after. Whether the church or the homeowners exercised the requisite exclusive control for adverse possession by maintaining the

7

grass, posting signs, placing landscape timbers, attempting to erect a fence, etc. since that date remains a disputed question of fact. But we find no evidence countering Patty's mother's sworn testimony that she, "along with other members of [her] family, continuously used, controlled and occupied the Real Estate" for over thirty years. *Id.* at 48.

We conclude that the homeowners, as the moving party, have established a prima facie case that there is no genuine issue of material fact as to the designated evidence, which establishes by clear and convincing proof that the homeowner's immediate predecessor in title adversely possessed and obtained fee simple title to the disputed real estate by operation of law prior to the church ever taking title to its real estate. And the church has failed to rebut these assertions. The homeowners are entitled to summary judgment on their claim of adverse possession.

**Prescriptive Easement Claim**

We likewise agree with the trial court that, as a matter of law, the homeowners possess a prescriptive easement to use the gravel driveway. When Patty's mother purchased her home in 1972, a detached, west-facing garage sat in the southwestern portion of her yard, adjacent to and opening to the east side of the driveway. The gravel driveway was the only means of access into the garage on the property during the period from at least 1972 until 2003. When Patty and her husband moved in, they tore down the old garage and built a two-car garage closer to their house, on the eastern border of lot 4 and opening to an alley way to the south.

The Fraley formulation for adverse possession also applies to prescriptive easements, "save for those differences required by the differences between fee interests and easements." Wilfong v. Cessna Corp., 838 N.E.2d 403, 406 (Ind. 2005), *cited in* Hoose, 886 N.E.2d at 94. For example, for prescriptive easements, the requisite statutory period is twenty years, Ind. Code § 32-23-1-1, and the claimant must exercise control of its limited land interest for a specific purpose, e.g. a right-of-way. Hoose, 886 N.E.2d at 94. Prescriptive easements "generally are not favored in the law," and, for that reason, a party claiming a prescriptive easement "must meet

stringent requirements." Wilfong, 838 N.E.2d at 405 (internal quotation marks and citation omitted), *cited in* Chickamauga Properties, Inc. v. Barnard, 853 N.E.2d 148, 152 (Ind. Ct. App. 2006), *reh'g denied*. "Where there has been use of an easement for 20 years which is unexplained," however, "such use will be presumed to be under a claim of right, adverse, and sufficient to establish title by prescription unless that use is contradicted or explained." Chickamauga, 853 N.E.2d at 153 (quoting Bauer v. Harris, 617 N.E.2d 923, 927 (Ind. Ct. App. 1993), *reh'g denied, superseded by statute on other grounds*). In order to rebut that presumption, "the owner must explain such use by demonstrating that he merely permitted the claimant to use his land." *Id.*

In their motion for summary judgment, the homeowners intermingle their prescriptive easement argument with their argument on adverse possession, arguing similarly that "Patty's mother, the immediate predecessor in title had already established the necessary time elements of adverse possession and prescriptive easement prior to [the church] ever taking title to its real estate." Appellant's App'x at 144. Again, the facts are undisputed as to the statutory time period having been established for the homeowners during Patty's mother's ownership and occupancy of lot 4. Further, the homeowners designated Patty's mother's affidavit, where she testified that she used and controlled the gravel driveway, without permission, to access her west-facing garage, which was only accessible from the gravel driveway—just as her predecessor had done. Patty's mother also testified that she paid for the maintenance of the gravel driveway, including the purchase of gravel, and that railroad ties to the west of the gravel driveway (depicted in an exhibit attached to her affidavit) separated the driveway from the gravel parking lot portion of lot 3. Further, "at no time was there any question as to [her] continuous use . . . of the driveway, nor any objection to [her] maintenance of the driveway and purchase of gravel for the same." Appellees' App'x at 49. The church presents no evidence to rebut the presumption that Patty's mother's use of the gravel driveway was adverse from the early 1970s thru the 1990s and thus fails to rebut that presumption that her prescriptive rights ripened prior to the time the church took title to its real estate. *See* Chickamauga, 853 N.E.2d at 154–55.

The church, however, argues in part that the homeowners abandoned any prescriptive easement when they tore down the west-facing garage and replaced it with the south-facing, two-

9

car garage. An easement, whether acquired by prescription or created by express grant or reservation, can be abandoned. Chickamauga, 853 N.E.2d at 154 (citing Seymour Water Co. v. Lebline, 195 Ind. 481, 488–89, 144 N.E. 30, 33 (1924)). Abandonment of a prescriptive easement requires nonuse and intent to abandon. Chickamauga, 853 N.E.2d at 154; Bauer, 617 N.E.2d at 929, *cited with approval in* Consol. Rail Corp. v. Lewellen, 682 N.E.2d 779, 783 (Ind. 1997). The church has failed to designate evidence of either. Although the easement is no longer necessary for vehicular access into the homeowners' garage, the homeowners claim possession of an easement by prescription, not an easement by necessity. And there is no dispute that the homeowners continue to use the easement for ingress and egress to their garage.[4] *See* Chickamauga, 853 N.E.2d at 154–55 (finding no intent to abandon easement where possessor used access road intermittently after complying with landowner's request to remove dog kennels and conveyed easement to son, the subsequent landowner). The homeowners have established a prima facie case that there is no genuine issue of material fact as to the designated evidence, which establishes by clear and convincing proof that the homeowners' immediate predecessor in title obtained a prescriptive easement, and the church has failed to show disputed material facts to the contrary. The homeowners are entitled to summary judgment on their claim of prescriptive easement.

## Conclusion

Finding no genuine issue of material fact, we affirm the grant of judgment for the homeowners for both their adverse possession and prescriptive easement claims.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.

---

[4] Although Patty Tucker mentioned in her affidavit that she and her family "have continuously used the gravel area, not only for means of ingress and egress" but also "for parking . . . vehicles" and as a means to access their "front door," in their motion for summary judgment, the homeowners focused on their use of the easement "for access through the gravel drive" to their garage. *See* Appellees' App'x at 58; Appellant's App'x at 143. Further, in her deposition, Patty admitted that her family "parked in the front side yard," not the driveway. Appellant's App'x at 61. The limited easement established by Patty's mother does not confer upon the homeowners the additional right to block the easement with parked vehicles. *See* Kwolek v. Swickard, 944 N.E.2d 564, 572 (Ind. Ct. App. 2011), *trans. denied.*