## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 22 2018, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Ann C. Coriden
Coriden Glover, LLC
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul D. Boas and Doris E. Boas, *Appellants-Plaintiffs,* | August 22, 2018 |
| v. | Court of Appeals Case No. 18A-PL-608 |
| Hayden Methodist Church, Jon Stoner, Erin Stoner, and River Valley Financial Bank, *Appellees-Defendants.* | Appeal from the Jennings Superior Court |
| | The Honorable Roger Duvall, Special Judge |
| | Trial Court Cause No. 40D01-1411-PL-63 |

**Friedlander, Senior Judge.**

[1] Appellants Paul and Doris Boas ("the Boases") appeal the trial court's determination that they did not prove the elements of adverse possession. We affirm in part, reverse in part, and remand with instruction.

[2] Since 1983, the Boases have owned a parcel of property in Jennings County. An aerial photograph taken around the time that the Boases purchased the property shows a row of trees between their property and property owned by Hayden Methodist Church ("the Church"). The row of trees runs to the north and terminates at a fence. The fence continues northward and encloses the back portion of the Boases' property. The Boases have treated the line of trees and fencing as their property line and have maintained the fence and all property to the west of this line since 1983.

[3] At all relevant times prior to 2008, the Church owned the entire parcel of land located immediately to the east of the Boases' property. At some point in 2008, the Church subdivided the northern part of its property and sold approximately one acre to Jon and Erin Stoner ("the Stoners").

[4] A survey was conducted prior to the subdivision of the Church's property. This survey revealed a discrepancy in the property line between the Boases' property and the Church's property. The area in question ("the Disputed Area") was a triangular shaped area along the parties' property lines. The Disputed Area was identified again in a subsequent survey.

[5] The Boases' garage has been partially located in the Disputed Area since before the Boases purchased the property in 1983. A shed belonging to the Boases is

also located in the Disputed Area. In 1994 or 1995, the Boases replaced the original fencing and, in 2002 or 2003, rebuilt their garage. Both the new fencing and the garage were re-built in the exact location as the prior fence and garage. The Boases have always taken responsibility for the upkeep of the Disputed Area and have always used the land in question and mowed it or had it hayed. The Boases believe that they have been paying taxes on the Disputed Area since purchasing their property in 1983.

[6] On November 3, 2014, the Boases filed a complaint against the Church, the Stoners, and River Valley Financial Bank regarding ownership of the Disputed Area. The Boases amended their complaint on February 19, 2015, to include claims of quiet title and adverse possession.

[7] The trial court conducted a bench trial on March 24, 2017. The presiding trial court judge subsequently recused himself, after which the parties agreed to have the special judge decide the case on the existing record. On February 16, 2018, the trial court issued an order awarding the Boases the portion of the Disputed Area claimed by the Church but not the portion claimed by the Stoners. On appeal, the Boases challenge the portion of the trial court's order relating to the Stoners.

[8] Initially we note the Stoners did not file an appellate brief.

> When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie

error.  Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it.

*Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006) (internal citation and quotation omitted).

[9]     In the appellate review of claims tried without a jury, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses.  A judgment will be clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment, and when the trial court applies the wrong legal standard to properly found facts.  While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo.

*Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) (internal citations and quotations omitted).

[10]    With respect to claims of adverse possession, the Indiana Supreme Court has held as follows:

the doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration, as follows:
    (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
    (2) Intent—The claimant must demonstrate intent to

claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* at 486. "The requisite period of time for adverse possession is ten years." *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015). "In addition to these elements, our Legislature has added the statutory requirement that the adverse possessor pay all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." *Id.* (brackets and internal quotation omitted). "Substantial compliance satisfies this statutory tax payment requirement where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession." *Id.* (internal quotation omitted). "Once the elements [of adverse possession] are established, fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner." *Snowball Corp. v. Pope*, 580 N.E.2d 733, 734 (Ind. Ct. App. 1991). "Once title vests in a party at the

conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited, even where the party pays rent to the titleholder, agrees to a survey to attempt to find the true boundary line, expresses satisfaction with a survey whose results are inconsistent with the property adversely possessed by him, or states that he does not claim the land and offers to buy it." *Fraley*, 829 N.E.2d at 487 (internal citations omitted).

[11] In this case, according to the trial court's findings, the Boases have continuously demonstrated the elements of adverse possession of the entire Disputed Area since 1983. As such, title vested with the Boases no later than 1993, well before the Church subdivided and sold a portion of its property to the Stoners in 2008. In light of the Indiana Supreme Court's conclusion in *Fraley*, we therefore conclude that any subsequent objection to the Boases' use of the Disputed Area by either the Stoners or the Church was insufficient to undermine the Boases' ownership of the Disputed Area. Consequently, the trial court erred by concluding that the Boases failed to prove their claim of adverse possession with regard to the portion of the Disputed Area claimed by the Stoners. On remand, we instruct the trial court to enter judgment in favor of the Boases on this point.

[12] Judgment affirmed in part, reversed in part, and remanded with instruction.

Baker, J., and Kirsch, J., concur.