## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2020, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Janette E. Surrisi
Plymouth, Indiana

ATTORNEYS FOR APPELLEE

Lindsay N. Shively
James E. Easterday
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Patricia Whitt,

*Appellant-Plaintiff,*

v.

Denise R. Devos,

*Appellee-Defendant.*

December 30, 2020

Court of Appeals Case No.
20A-CT-810

Appeal from the Marshall Circuit Court

The Honorable Curtis D. Palmer, Judge

Trial Court Cause No.
50C01-1905-CT-30

**Altice, Judge.**

## Case Summary

[1] This is a property line dispute that involves a small, triangular swath of land (the Disputed Property) between two residential lots, one owned by Patricia

Whitt and the other owned by Denise Devos. Whitt filed a complaint for encroachment and continuing trespass against Devos after Devos refused to move a shed that Whitt alleged encroached on her property by as much as 2.7 feet. Devos filed an answer and a counterclaim requesting a declaratory judgment that she was the true and rightful owner of the Disputed Property by way of adverse possession. Following a bench trial, the trial court entered judgment in favor of Devos, finding that she acquired title to the Disputed Property by adverse possession. The court ordered that the legal description for Devos's property be changed to include the Disputed Property. Whitt now appeals.

[2] We affirm.

## Facts & Procedural History

[3] Whitt owns real estate in Argos, Marshall County, Indiana, and Devos owns the residential parcel contiguous to Whitt's. The parcels are rectangular, single-family residential properties that front onto West South Street and have detached garages located on an alleyway at the rear of their respective parcels. The garages are approximately four feet apart.

[4] Claude Howell owned and resided on what is now Whitt's property from 1988 until 2006. At some point during that time, Howell constructed a six-foot wooden privacy fence (the Fence) around his back yard. The Fence ran right up beside his garage and to the house, including between the two properties. Howell believed he erected the Fence on his property but along the property

line. While Howell resided at the property, he never had any conversation or entered into any agreement with anyone regarding the location of the property line or the location of the property line in relation to the Fence.

[5] In 2004, Donald Walls purchased Howell's property at a tax sale and took possession after he received the tax deed in January 2006. Walls never resided on the property as he purchased it to fix up and resell. While Walls owned the property, he never had any discussion with Devos about the location of the property line between their respective parcels. In 2007, Walls entered into a land contract to sell the property to Johnny Whitt, Sr., and Whitt.[1] After completion of the land contract, Walls deeded the property to the Whitts. In December 2012, Johnny quitclaimed his interest in the property to Whitt. They have continuously resided on the property since 2007. They have never had any conversations or agreements regarding the location of the property line shared with Devos.

[6] Devos (and her then husband) purchased the property adjacent to what is now Whitt's in 1998, and Devos has continuously resided on the property since that time. Her current husband, Pete Devos, now resides on the property with her. The Fence was in place when Devos purchased her parcel and her prior husband planted a row of elm trees continuing from and along the same line as the Fence toward the front property line. Devos and her current husband

---

[1] On the warranty deed, Whitt is identified as "Patricia Belcher" as she had not yet married Johnny. *Appellant's Appendix Vol. 3* at 16.

always maintained the property on their side of and up to the Fence and row of elm trees (now a row of shrubs), including mowing, fertilizing, and weeding. Devos obtained a fiberglass shed and placed it in the back yard very near the Fence in 2005. Although the shed is not permanently affixed to the ground, it has remained in the same location since. For all but one year, Devos timely paid taxes on her property. Although Devos did not pay their property taxes in 2015 for the 2014 tax year, by 2018 she had paid all taxes due such that there "is currently no balance due on that parcel." *Transcript Vol. 2* at 53. Starting in 2012, Devos's tax liability included the fiberglass shed after it was physically discovered during a general assessment of the property.

[7] The boundary line between the properties was called into question in 2017 when Whitt tore down her garage and sought to replace it with a new, larger garage. As part of this process, Whitt had to seek a variance from the Argos Board of Zoning Appeals (the Board). In response, the Board required that a survey be performed to establish the property line between Whitt's and Devos's property.

[8] Whitt had a legal survey completed, which was recorded with the Marshall County Recorder on August 18, 2017. When the survey was performed, only a small portion of the Fence along the shared property line remained. There was also a row of shrubs the Whitt had planted that continued near the same line where the elm trees once stood. On the survey, the surveyor noted an "inconsistency in lines of occupation" in that the actual property line was something other than the location of the still-existing portion of the Fence and

the row of shrubs. *Exhibit Index* at 7. The survey also showed that Devos's shed was two point seven feet over the property line and her garage was half a foot over the property line.[2] Whitt started to erect a new fence alone the boundary line as determined by the survey but could not complete the project because of the location of the shed. Whitt asked the Devos to move the shed and, according to Johnny, Devos initially indicated she would do so. Whitt, however, received a letter from counsel for Devos stating that the shed was located on Devos's property and would not be moved.

[9]     On May 22, 2019, Whitt filed a complaint for encroachment against Devos requesting an order that Devos remove her shed from Whitt's property. On August 13, 2019, Devos filed her answer and counterclaim, wherein she requested, in part, a declaratory judgment that she was the true and rightful owner of the Disputed Property by way of adverse possession.[3] The trial court held a bench trial on February 20, 2020. On March 6, 2020, the trial court entered judgment in favor of Devos on her counterclaim. Specifically, the trial court concluded that Devos's maintenance and use of the property, including installation of the shed, were sufficient to establish her control over the Disputed Property, an intent to claim full ownership of the Disputed Property,

---

[2] Whitt acknowledges that Walls informed her that Devos's garage encroached on her property by a few inches.

[3] Devos also claimed $9000 in damages to her garage foundation and personal property due to Whitt's installation of a rubber barrier and gravel between their garages that Devos claimed caused water to run off into her garage.

and notice to Whitt that she was exercising exclusive control over the Disputed Property. The court also found that Devos established that she exercised control, intent, and notice for the requisite ten-year period. With regard to payment of real estate taxes, the court concluded:

> There is no evidence regarding any reasonable and good faith belief of either owner that they paid any more or less property taxes than what they believed their property encompassed. For [Devos] that was up to the wooden fence line, and the same for [Whitt] on her side of the wooden fence line. Given the historical uses of that area and the historical mowing patterns, their beliefs were not unreasonable.

*Appellant's Appendix Vol. II* at 13. The court therefore concluded that Devos acquired ownership to the Disputed Property by adverse possession and was the rightful owner thereof.[4] Whitt now appeals. Additional information will be provided as necessary.

## Discussion & Decision

[10] We begin by noting that the trial court entered findings of fact and conclusions pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the

---

[4] The trial court denied Devos's claim for damages.

findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard*, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999). We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *Kwolek v. Swickard*, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011) (citing *McCauley v. Harris*, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), *trans. denied*), *trans. denied*.

[11] The doctrine of adverse possession "entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration." *Id.* at 486. In reviewing a judgment requiring proof by clear and convincing evidence,

> an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*Fraley v. Minger*, 829 N.E.2d 476, 483 (Ind. 2005) (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 288 (Ind. 2002)).

[12] In *Fraley*, our Supreme Court reformulated the common law elements necessary for a person to obtain title to land through the doctrine of adverse possession and held that the claimant must establish clear and convincing proof of control, intent, notice, and duration. The Court explained each of these elements, noting their relationship with the prior common law elements, as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

> (4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* The requisite period of time to establish adverse possession is ten years. *Id.* at 484. In addition to the common law elements for adverse possession, the

General Assembly "has added the statutory requirement that 'the adverse possessor pay[ ] all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." *Celebration Worship Center, Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015) (citing Ind. Code § 32-21-7-1).

[13] Whitt first challenges the trial court's determination that Devos's maintenance activities, i.e., mowing, fertilizing, etc., sufficiently established the elements of control, intent, and notice. In support of her argument, Whitt directs us to *McCarty v. Sheets*, 423 N.E.2d 297 (Ind. 1981). In *McCarty*, the defendants' garage encroached on the adjoining neighbor's lot. The defendants testified that they cut the grass along the side of his garage and the general area in front and in back of it and that they paid all of the taxes assessed against the real estate, including the taxes assessed against the garage. The court quieted title in the defendants, not only to the land upon which his garage stood but also to a four-foot-two-inch wide strip of land along the shared property line with the stated intention "to establish the boundary line at a point midway between the garages of the plaintiff and the defendants." *Id*. at 300. The Supreme Court reversed, concluding that "the only 'palpable and continuing' act of ownership went to the land actually encroached upon by Defendants' garage." *Id*. The Court acknowledged that "maintenance activities in a residential area are a factor in a property dispute," but nevertheless found that the defendants' acts of maintaining the property generally around the garage did not, "standing alone,"

support divesture of the additional strip of land by adverse possession. *Id.* The Court found the defendants' actions to be in the nature of periodic and sporadic acts of ownership, which "are not sufficient to constitute adverse possession." *Id.* at 301. The Court held that the trial court erred in awarding defendants more land than that occupied by their garage.

[14] We find the *McCarty* case distinguishable here. Since Devos purchased the lot in 1998, she has consistently maintained the property up to the Fence. As the trial court found, in addition to mowing, weeding, and fertilizing the Disputed Property, Devos had the fiberglass shed erected near the Fence in 2005. Clearly, Devos did more than sporadically maintain some undefined strip of land; rather, she consistently maintained the Disputed Property. Her maintenance activities taken with the placement of the shed is sufficient evidence from which the trial court could have concluded that Devos satisfied the elements of control, intent, and notice as to the Disputed Property. *See Herrell v. Casey*, 609 N.E.2d 1145, 1148 (Ind. Ct. App. 1993) (maintaining, building a shed, and storing possessions on disputed property held sufficient); *Penn Cent. Transp. Co. v. Martin*, 353 N.E.2d 474, 477-78 (Ind. Ct. App. 1976) (mowing grass and erecting improvements held sufficient).

[15] Whitt also asserts that the trial court's judgment was in error because the court had "an important misunderstanding concerning the position of the fence." *Appellant's Brief* at 12. Specifically, Whitt suggests that the court erroneously understood that the Fence ran the entire length of the property line between the adjacent parcels, when in fact it did not. To the extent Whitt is suggesting that

adverse possession requires a fence or other type of landmark to identify land claimed to be adversely possessed, she is mistaken. There is no such requirement in the law.

[16] Here, Pete Devos testified that he "just assumed" that the perceived property line "followed that fence line up on out to the street" and that they always maintained the property up to that line. *Transcript Vol. 2* at 90. The court awarded Devos only the sliver of property created by running the new property line starting at the shed and running at such an angle to keep a nearly straight line intact as between the two parcels, not any additional property as the trial court in *McCarty* erroneously awarded. Even if, as Whitt claims, the trial court mistakenly believed the Fence ran the entire length of the property, its conclusion that Devos acquired title to the Disputed Property by adverse possession is not affected.

[17] Whitt also argues that Devos did not establish the elements of adverse possession for the requisite duration of ten years. Whitt asserts no "reasonable trier of fact could determine that the element of duration was proved by clear and convincing evidence" when the only evidence supporting the trial court's finding that the shed was erected in 2005 is the "self-serving" testimony of Devos and her current husband. *Appellant's Brief* at 16, 17.

[18] Whitt's predecessors in title (Howell and Walls) testified that they did not recall the shed being in place when they held title. Howell was shown Plaintiff's Exhibit 8, a picture of the remaining partial fence and the shed, and he testified

that he did not "recognize" the "storage building." *Transcript Vol. 2* at 32. Walls testified that Devos's shed was not there when he purchased the property, but in later questioning, he clarified, "I don't remember a shed being there." *Id.* at 40. Walls never lived on the property. The Marshall County Assessor testified that Devos's shed did not show up on the property record card until 2012. Her testimony in this regard was based on the fact that the shed was not identified on a prior general assessment of the property. She did not identify when the prior general assessment occurred but noted that at that time such were occurring every "five or ten years." *Id.* at 50. The Assessor did not testify that the shed was erected in any specific year. Finally, Whitt points to her testimony and that of her husband in which they stated that the shed was erected in August of 2007.

[19] In contrast to this testimony, Pete testified unequivocally that he erected the shed in 2005. He explained how he acquired the shed from a friend, dismantled the shed and numbered each piece, and then erected the shed on Devos's property the following weekend. He testified that before the bench trial, he reached out to his friend and confirmed the year he received the shed. He also recalled that he placed the shed next to a line of elm trees and that the row of elm trees fell over a couple years later during a storm in May 2007. Devos testified that she helped her husband erect the shed on her property in 2005.

[20] To the extent there was conflicting evidence, such was for the trial court to assess witness credibility and weigh the evidence. As we noted above:

an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*Fraley*, 829 N.E.2d at 483 (quoting *In re B.H.*, 770 N.E.2d at 288).

[21]    Here, the trial court clearly believed the testimony of the Devos and her husband.  Pete testified as to when the shed was erected on Devos's property and his testimony supports the trial court's finding that the shed was erected in 2005 and had been in the same location for more than ten years.   The evidence supports the trial court's determination that the duration element of adverse possession was met.

[22]    Finally, Whitt argues that Devos did not demonstrate compliance with the adverse possession tax statute.  I.C. § 32-21-7-1(a) provides:

> Except as provided in subsection (b), in an action to establish title to real property, possession of the real property is not adverse to the owner in a manner as to establish title to the real property unless the adverse possessor pays all taxes and special assessments that the adverse possessor reasonably believes in good faith *to be due* on the real property during the period the adverse possessor claims to have adversely possessed the real property.  However, this section does not relieve any adverse possessor from proving all the elements of title by adverse possession required by law.

(Emphasis supplied). Whitt contends that the emphasized language "suggests that the [tax] payments must be made, on time, within the time period in which the claimant is asserting adverse possession." *Appellant's Brief* at 20. Whitt thus argues that because the evidence showed Devos did not pay her property taxes in 2015 (for the 2014 tax year) her claim of adverse possession fails.

[23] As our Supreme Court has held, substantial compliance satisfies this statutory tax payment requirement "where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession." *Fraley*, 829 N.E.2d at 493. Here, Devos and Pete testified that they had paid the taxes due on their property since they owned it and that they believed their property ran up to the Fence and then in a straight line from the Fence. Although Devos did not timely pay the 2014 property taxes when due in 2015, the county treasurer testified that Devos eventually paid her property taxes in full through 2018. Based on this evidence, we conclude that Devos substantially complied with the adverse possession tax statute.

[24] We also disagree with Whitt's reliance on *Celebration*, 35 N.E.3d 251, as support for her reading of the adverse possession tax statute. In *Celebration Worship*, there was a boundary dispute similar in nature to that at issue here. In considering the evidence pertaining to payment of property taxes, the Court noted, as is pertinent here, that the county tax records showed there was "no arrearage in taxes." *Id*. at 255. Payment of the property tax, however, was not at issue. Rather, the Court was asked to consider whether the homeowners claiming adverse possession had a good faith belief that they had paid all taxes

on the disputed real estate. The Court's statement that there was "no arrearage in taxes" was an acknowledgment of the evidence, not a statement that the adverse tax possession statute requires continuous and timely payments of all property taxes. To interpret the Court's statement in that manner does not comport with the Court's statement that substantial compliance with the adverse possession tax statute is all that is required. Here, as we stated above, the evidence presented demonstrates that Devos substantially complied with the adverse possession tax statute.

[25] As we concluded above, Devos exercised palpable and continuing acts of ownership, including mowing, fertilizing, weeding, and placing a shed within the Disputed Property. In granting Devos adverse possession, the trial court provided the following legal description for the Disputed Property:

> Commencing 218.43 feet west of Michigan Road on the South side of South Street in the Town of Argos, Indiana; thence South 20°33'08" E 140.09 feet to an alley in Lowery's Continued Addition to the Town of Argos, thence West along the North side of said alley 3.8 feet; thence Northerly in a straight line to the place of beginning.

*Exhibit Index* at 211. Thus, at its widest, the Disputed Property is 3.8 feet and the new property line that is created is a straight line between the properties that accounts for the placement of Devos's garage and shed, areas that she consistently maintained and occupied. The trial court did not err in granting Devos's request for adverse possession to the Disputed Property in its entirety.

[26] Judgment affirmed.

Riley, J. and May, J., concur.