

**FILED**

May 23 2019, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Michael L. Carmin | Robert S. McCrea |
| CarminParker, P.C. | McCrea & McCrea |
| Bloomington, Indiana | Bloomington, Indiana |

IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Gregory T. Hardin and Kelly T. Hardin, | May 23, 2019 |
| *Appellants,* | Court of Appeals Case No. 53A01-1712-PL-2964 |
| v. | Appeal from the Monroe Circuit Court |
| Ruth McClintic, | The Honorable Elizabeth Ann Cure, Judge |
| *Appellee.* | Trial Court Cause No. 53C01-1605-PL-1113 |

**Pyle, Judge.**

## Statement of the Case

This appeal involves a dispute between adjacent property owners over a property boundary and the use of a gravel driveway located on the boundary of the two properties. Following a bench trial, the trial court determined that: (1) Appellee/Defendant Ruth McClintic ("McClintic") had established her counterclaims for adverse possession to land that was up to the right wheel

track of the gravel driveway and her counterclaim for a prescriptive easement to use the remainder of the driveway for ingress and egress to her property;[1] and (2) Gregory T. Hardin and Kelly T. Hardin (collectively, "the Hardins") had failed to establish their claims for injunctive relief based on trespass and damages. The Hardins argue that the trial court erred by entering judgment in favor of McClintic on her counterclaims and by entering judgment against them on their claims.[2] Concluding that there was no error, we affirm the trial court's judgment.

[2] We affirm.

## Issues

1. Whether the trial court erred by entering judgment in favor of McClintic on her counterclaims.

2. Whether the trial court erred by entering judgment against the Hardins on their claims.

## Facts

[3] Both McClintic and the Hardins own property that abuts Lake Lemon in Monroe County. McClintic owns a rectangular tract of real estate located at

---

[1] The trial court also determined that McClintic had established a right to use the gravel driveway based on her counterclaim for an implied easement by prior use. Because we affirm the trial court's judgment that McClintic had a right to use the driveway based on the prescriptive easement, we need not address her right to use it based on an implied easement by prior use.

[2] The Hardins state that appellate review of the trial court's judgment on their claims would be reviewable on appeal only if our Court were to reverse the trial court's judgment on McClintic's counterclaims. Therefore, we will review the Hardins' argument regarding the counterclaims before we review their argument regarding their claims.

9161 East Southshore Drive ("McClintic Property"), and this tract measures 49.8 feet wide and 269 feet long and contains 0.30 of an acre "more or less." (Ex. Vol. at 28). The Hardins own an adjacent rectangular tract of real estate located at 9155 East Southshore Drive ("Hardin Property"), which is located to the west of the McClintic Property.[3] The Hardin Property measures 90 feet wide and 269 feet long and contains 0.56 of an acre "more or less." (Ex. Vol. at 27). A gravel driveway, which is the focus of this appeal, lies on the western border of the McClintic Property and the eastern border of the Hardin Property.

[4] These two property tracts were originally part of a larger tract of real estate owned by Virginia Chitwood ("Chitwood"). Around 1965, Chitwood divided her larger tract of land ("the Chitwood Property") into several rectangular tracts and sold them. Among the tracts of land sold were the McClintic Property and the Hardin Property. The gravel driveway at issue was in existence at the time Chitwood severed and conveyed these two tracts of the Chitwood Property.

[5] On July 20, 1965, Chitwood conveyed the Hardin Property to Norma Ratliff ("Ratliff") as trustee for a group of families, who called themselves the Bloomington Boat Club ("the Boat Club"). The members of the Boat Club put some trailers on the western side of their property and used the property during the weekends. On April 5, 1966, Chitwood conveyed the McClintic Property to

---

[3] The Hardins also own another tract of real estate at 9149 East Southshore Drive, which is west of the Hardin Property. They purchased this other property prior to purchasing the Hardin Property. This other property is not at issue in this appeal.

Raymond Hacker and Gladys Hacker ("the Hackers"). The Hackers added a cabin on their property and added a parking area by the cabin. The Hackers' cabin is located immediately to the east of the gravel driveway. The Hackers and the members of the Boat Club used the gravel driveway to access their individual properties, and they "always shared the cost on it." (App. Vol. 2 at 158).

[6] On December 24, 1970, the Hackers conveyed the McClintic Property to Lowell Willis and Lauretta Willis ("McClintic's parents"). Shortly thereafter, in 1971, McClintic's parents, after obtaining a permit from the Monroe County Health Department for the approval of a septic system, installed a septic system on the McClintic Property. The septic system is located on the property between the cabin and Southshore Drive, and it encompasses almost the entire width of the property. In August 1987, McClintic's parents obtained a permit to install a mobile home on the McClintic Property. Around that same time, they also obtained a driveway permit, which was for a "pre-existing" driveway, at the McClintic property. (Ex. Vol. at 39). As did their predecessor in title, McClintic's parents always used the gravel driveway for ingress to and egress from the McClintic Property, and they contributed to the maintenance of the gravel driveway by paying for some gravel to add to it.

[7] In 1995, McClintic began living on the McClintic Property, including in the cabin and then in the mobile home. On June 25, 2004, McClintic's parents conveyed the McClintic Property to McClintic. McClintic continued to live on the McClintic Property until 2014 or 2015, and then she rented it out to tenants.

Both McClintic and her tenants used the gravel driveway to enter and exit the McClintic Property.

[8] On July 18, 2007, the remaining members of the Boat Club—which included Mary Masters, Garland Guy Robertson, Eugenia M. Goodman, Candra Empson, Claudia Polley, and Sharon Slaughter—conveyed the Hardin Property to the Hardins. The Hardins did not have or review a survey prior to purchasing the property. They had planned to remove the three trailers that the Boat Club had installed on the property, build a house on the lot, and then sell it.

[9] In October 2007, after having a survey done of the Hardin Property, the Hardins learned that McClintic could possibly have some rights to the gravel driveway. At the end of 2007, the Hardins sent McClintic two letters, in which they sought to determine if McClintic had permission or an easement to use the gravel driveway and in which they told her that her use of the driveway would constitute trespass. McClintic did not respond to these letters. At the beginning of 2008, the Hardins sent McClintic two more letters, in which they stated that they wished to avoid any confrontation and that they were granting McClintic permission to continue using the gravel driveway.

[10] The Hardins later removed the trailers from the Hardin Property, but they did not replace them with any other type of structure. Whenever the Hardins went to Lake Lemon, which was about six times per year, they stayed at the home of

their friend, Lynn McNamee ("McNamee"), who owned a property to the west of the Hardin Property.

[11] Years later, in 2016, the Hardins put the Hardin Property on the market. In April 2016, the Hardins had another survey done and hired a contractor to erect a fence around their property. The contractor set stakes to mark where the area where the fence would be installed, and that area apparently included part of the gravel driveway. McClintic objected, and her tenant blocked the contractor from erecting the fence.

[12] In May 2016, the Hardins filed a complaint against McClintic and sought: (1) a permanent restraining order based on trespass to enjoin McClintic from entering onto the Hardins' Property, including the driveway; (2) damages from when McClintic trespassed on their property and blocked installation of the fence gate; and (3) damages based on McClintic's alleged tortious interference with the Hardins' fencing contract. Thereafter, McClintic filed a counterclaim and raised the following claims: (1) adverse possession of a "strip of land encompassing the gravel driveway[;]" (2) prescriptive easement for use of the gravel driveway to access her property; and (3) implied easement from prior use. (App. Vol. 2 at 70, 71).[4]

---

[4] McClintic later filed an amended counterclaim, adding a claim for an irrevocable license and a claim of title by acquiescence. These claims are not at issue in this appeal.

[13]     In July 2017, the trial court held a bench trial on the Hardins' claims and McClintic's counterclaims. During the Hardins' case-in-chief on their claims, Kelly Hardin ("Hardin") testified that when she purchased the Hardin Property, she saw that McClintic was using the gravel driveway. Hardin also testified that she had "no concern" when she saw McClintic using the driveway and that she had allowed McClintic to continue using it. (Tr. Vol. 3 at 36). Additionally, Hardin testified that she was now revoking her permission for McClintic to use the gravel driveway and that McClintic could put a driveway on her own property.

[14]     In support of McClintic's counterclaims, she testified and presented testimony from two individuals, Garland Guy Robertson ("Robertson") and Sharon Masters ("Masters"), who were the children of some of the charter members of the Boat Club.[5] McClintic presented evidence regarding the property boundary for her property, the historical use of the gravel driveway, and her payment of property taxes.

[15]     McClintic testified that her parents purchased the McClintic Property in 1970 to use for weekend getaways and that she and her parents had used the gravel driveway continuously since that time to access the McClintic Property. She also testified that there was never an issue with the gravel driveway until 2007

---

[5] Robertson was the stepson of Ratliff, who was the original owner listed on the deed when Chitwood conveyed the Hardin Property to the Boat Club in 1965, and Masters was the daughter of charter member Mary Masters. Robertson's testimony was introduced via his deposition, and Masters testified at trial.

when the Hardins purchased the Hardin Property and then sent her some letters.

[16] McClintic testified that she had discussed the location of the property boundary with her father and that she had always understood that she, and her parents before her, owned part of the driveway, consisting of one-third of the driveway at the top, which corresponded approximately to the right wheel track, and two-thirds of it at the bottom. McClintic testified that she had paid property taxes on the McClintic Property and that she understood that her tax payments covered the portion of the gravel driveway that she claimed that she owned. She also introduced property tax statements showing tax payments made between 1981-2015.

[17] McClintic testified that, throughout the years, she and her parents had helped maintain the gravel driveway and had paid for gravel to add to the driveway. She also testified that her tenant who was living on the McClintic Property had also recently paid for gravel. McClintic introduced some receipts showing the purchase of gravel. She testified that she had never asked the Boat Club for permission to use the gravel driveway and that no member of the Boat Club had ever given her permission to do so.

[18] McClintic's testimony regarding the property boundary and use of the gravel driveway was corroborated by Robertson's and Masters' testimony. Robertson was a child when his parents and the other members of the Boat Club had purchased the Hardin Property in 1965. Robertson testified that the gravel

driveway was originally owned by Chitwood and had been in existence since the Boat Club purchased the Hardin Property. He testified that the property boundary between the McClintic Property and the Hardin Property was the "right wheel track" of the gravel driveway. (App. Vol. 2 at 168). Robertson testified that, since the time he was a child, his parents had told him to stay off the property on the other side of the right wheel track because that was the McClintic Property. He also testified that the use of the driveway had always been shared by the Boat Club and the owners of the McClintic Property, including McClintic, her parents, and the Hackers. Additionally, Robertson's testimony confirmed that McClintic's parents had shared in the cost of adding stone to the driveway.

[19] Masters also testified that the gravel driveway was in existence at the time her family and the other members of the Boat Club purchased the Hardin Property in 1965. She testified that the property boundary between the McClintic Property and the Hardin Property was a "boundary down the driveway" and that McClintic owned part of the driveway. (Tr. Vol. 3 at 47). Masters testified that her parents and the other Boat Club members showed her the location of the property line when the Boat Club purchased the property and that she was told that the Boat Club owned a "[p]ortion" of the driveway. (Tr. Vol. 3 at 56). Masters also testified that McClintic and McClintic's parents had always used the driveway and that the Boat Club referred to the gravel driveway as a shared driveway. Moreover, Masters testified that neither McClintic nor her parents had ever asked for permission to use the gravel driveway, and she testified that

none of the Boat Club members ever objected to McClintic's or her parents' use of the driveway.

[20] In defense of McClintic's counterclaims, the Hardins offered the testimony of their friend, McNamee, and they introduced the deposition of Sharon Slaughter ("Slaughter"), whose family had been members of the Boat Club. The testimony of McNamee and Slaughter suggested that the property line was someplace other than the right wheel track as had been identified by McClintic's witnesses, and Slaughter testified that someone from the Boat Club had given McClintic's predecessors in title permission to use the gravel driveway.

[21] In September 2017, the trial court issued detailed findings of fact and conclusions thereon pursuant to Trial Rule 52. When determining whether McClintic had met her burden of proving her counterclaims for adverse possession and prescriptive easement, the trial court applied the factors and analysis set forth in *Fraley v. Minger*, 829 N.E.2d 476 (Ind. 2005) and *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015). When ruling on these counterclaims, it was clear that the trial court assigned greater weight to the testimony of McClintic's witnesses, and it determined that McClintic had established her adverse possession counterclaim for the land up to the right wheel track of the gravel driveway and had established that she had a prescriptive easement to use the remainder of the driveway for access to her property. At the end of the trial court's twenty-one-page order, the trial court "enter[ed] judgment in favor of the Defendant/Counterclaimant, Ruth

McClintic based on the theory of adverse possession, prescriptive easement, and easement by prior use and . . . quiet[ed] title to the driveway in McClintic's favor." (App. Vol. 2 at 32). The trial court also entered judgment against the Hardins on the claims in their complaint.

[22] Thereafter, the Hardins filed a motion to correct error, arguing that the trial court had entered judgment on "incompatible legal theories" that created "uncertainty and impossible performance by the parties." (App. Vol. 2 at 108). They specifically argued that "prescriptive easement and implied easement by prior use, as entered by the Court in its judgment, indicate[d] that [the Hardins] continue[] to own the land encompassing the driveway but subject to certain easement rights in favor of [McClintic]" and that "[t]his conclusion [wa]s incompatible with the finding of adverse possession which [wa]s a transfer of title to [McClintic] and completely deprive[d] [the Hardins] of any continued or future use of the driveway area." (App. Vol. 2 at 108-09). When McClintic responded to the Hardins' motion to correct error, she requested the trial court to amend its order "to differentiate the land where fee titled ha[d] been obtained via adverse possession and the land where only a use right exist[ed] in an easement." (App. Vol. 2 at 130).

[23] The trial court denied the Hardins' motion to correct error and granted McClintic's motion to amend its order. In the amended order, the trial court kept its findings and conclusion intact but clarified its prior judgment in favor of McClintic by adding the following language:

**The Court now quiets title to the land up to the right wheel track of the gravel driveway in fee simple in favor of the Defendant, Ruth McClintic. The Court quiets title to the remainder of the gravel driveway in favor of the Defendant, Ruth McClintic, in her right to use the remainder of the gravel driveway for purposes of ingress and egress to her property.**

(App. Vol. 2 at 54) (emphasis in original). The Hardins now appeal.

# Decision

The Hardins argue that the trial court erred by: (1) entering judgment in favor of McClintic on her counterclaims; and (2) entering judgment against the Hardins on their claims. We will review each argument in turn.

Here, following a bench trial, the trial court entered findings of fact and conclusions thereon pursuant to Trial Rule 52. "In the appellate review of claims tried without a jury, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses." *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) (citing Ind. Trial Rule 52). "Indeed, 'it is not within the province of an appellate court to reweigh the evidence or to reassess the credibility of the witnesses.'" *Garriott v. Peters*, 878 N.E.2d 431, 437 (Ind. Ct. App. 2007) (quoting *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 407 (Ind. 2005)), *trans. denied*. "A judgment will be clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment, and when the trial court applies the wrong legal standard to properly found facts." *Fraley*, 829 N.E.2d at 482 (internal citations and quotation marks omitted). "While findings of fact

are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo." *Id.* We will not reverse the trial court's judgment unless it is clearly erroneous, that is, when our review of the record leaves us with a firm conviction that a mistake has been made. *Id.*

### 1. McClintic's Counterclaims

[26] The Hardins contend that the trial court erred by entering judgment in favor of McClintic on her counterclaims for adverse possession and prescriptive easement.

[27] "[T]he doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration[.]" *Id.* at 486. More specifically, the adverse possessor must show the following:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

> (4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* "The requisite period of time for adverse possession is ten years." *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015). In addition to these elements, INDIANA CODE § 32-21-7-1(a) imposes a requirement that an adverse possessor "pay all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." "Substantial compliance satisfies this statutory tax payment requirement 'where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.'" *Celebration Worship Ctr.*, 35 N.E.3d at 254 (quoting *Fraley*, 829 N.E.2d at 493). "Once the elements of adverse possession are established, fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner." *Id.* at 254 n.2. "Once title vests in a party at the conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited, even where the party pays rent to the titleholder, agrees to a survey to attempt to find the true boundary line, expresses satisfaction with a survey whose results are inconsistent with the property adversely possessed by him, or states that he does not claim the land and offers to buy it." *Fraley*, 829 N.E.2d at 487 (internal citations omitted).

[28] "The *Fraley* formulation for adverse possession also applies to prescriptive easements, save for those differences required by the differences between fee interests and easements." *Celebration Worship Ctr.*, 35 N.E.3d at 257 (internal quotation marks and citations omitted). Thus, a party claiming the existence of a prescriptive easement "must establish clear and convincing proof of[:] (1) control, (2) intent, (3) notice, and (4) duration." *Wilfong*, 838 N.E.2d at 406. The requisite statutory period for a prescriptive easement is twenty years. *See Celebration Worship Ctr.*, 35 N.E.3d at 257; IND. CODE § 32-23-1-1 (explaining that "[t]he right-of-way, air, light, or other easement from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years"). The continuity of use for the required twenty-year period may be shown by "tacking" from the use of the predecessors in title. *Whitman v. Denzik*, 882 N.E.2d 260, 264 (Ind. Ct. App. 2008). "Where there has been use of an easement for 20 years which is unexplained . . . such use will be presumed to be under a claim of right, adverse, and sufficient to establish title by prescription unless that use is contradicted or explained." *Celebration Worship Ctr.*, 35 N.E.3d at 257 (internal quotation marks and citations omitted). "In order to rebut that presumption, the owner must explain such use by demonstrating that he merely permitted the claimant to use his land." *Id.* (internal quotation marks and citations omitted). "Prescriptive easements generally are not favored in the law, and, for that reason, a party claiming a prescriptive easement must meet stringent requirements." *Celebration Worship Ctr.*, 35 N.E.3d at 257 (internal quotation marks and citations omitted). Similar to adverse possession, the existence or

non-existence of a prescriptive easement is a question of fact. *Id.* "[O]nce a prescriptive easement has been established, the right vests by operation of law." *Id.*

[29] In regard to McClintic's adverse possession counterclaim, the trial court concluded that "the *Fraley* factors for adverse possession ha[d] been satisfied for the portion of the driveway up to and including the right wheel tire track when driving north along the driveway towards Lake Lemon in favor of Ruth McClintic" and that "McClintic by and through her predecessors [in] title including [McClintic's Parents], ha[d] established that they ha[d] substantially complied with the requirement to pay taxes due upon the land in satisfaction of IC § 32-21-7-1." (App. Vol. 2 at 46). Additionally, the trial court determined that McClintic was entitled to judgment on her prescriptive easement counterclaim because "the *Fraley* factors for adverse possession as adapted to prescriptive easements ha[d] been satisfied by Ms. McClintic and her predecessors in title . . . in satisfaction of the 20[-]year requirement imposed by IC § 32-23-1-1." (App. Vol. 2 at 44).

[30] The Hardins do not dispute that McClintic and her predecessors in title had used the gravel driveway for more than twenty years. Nor do they challenge the trial court's determination that the property boundary of the two properties was the right wheel track of the driveway. Instead, the Hardins argue that: (1) the evidence does not support the *Fraley* elements for adverse possession or a prescriptive easement because the Hardins presented evidence that the use of the gravel driveway by McClintic and her predecessors in title was permissive

and/or because the driveway was not used exclusively by McClintic; and (2) the tax payment element of adverse possession was not met because McClintic did not have a good faith belief that she had paid taxes attributable to the gravel driveway.

[31] The Hardins' challenge to the trial court's judgment on adverse possession and prescriptive easement seems to be premised on the mistaken understanding that the trial court had determined that McClintic had both adverse possession and a prescriptive easement of the entire gravel driveway. The trial court, however, determined that McClintic had established her adverse possession counterclaim for the land up to the right wheel track of the gravel driveway, resulting in ownership of that part of the land, and that she had established that she had a prescriptive easement to use the remainder of the driveway for ingress and egress to her property. With that clarification in mind, we turn to the Hardins' arguments.

[32] We first reject the Hardins' assertion that McClintic's counterclaims should be reversed because McClintic's use of the gravel driveway (and the use of her predecessors in title) was merely permissive. The Hardins made this argument during bench trial, and the trial court specifically rejected it. The trial court, after weighing the credibility of McClintic's witnesses and the Hardins' witness, found that McClintic and her predecessors in title had never sought permission from the Boat Club to use the gravel driveway, nor had the Boat Club ever granted such permission. The Hardins' argument regarding permission amounts to merely a request to reweigh the evidence and the trial court's

credibility determinations, both of which we decline to do. *See Fraley*, 829 N.E.2d at 482 (explaining that we will give due regard to the trial court's determination of witness credibility).[6]

[33] We also reject the Hardins' contention that the trial court erred by entering judgment for McClintic because she was not the only person to use the gravel driveway and their argument that "[t]he fact that others ha[d] the right to use the disputed parcel is fatal to the claimant's claim" of adverse possession. (The Hardins' Br. 16). Again, the Hardins fail to distinguish between the ownership of part of the land up to the right wheel track of the driveway and the use of the remainder of the driveway. The record before us does not show that the Boat Club ever used the land up to the right wheel track such that it would defeat McClintic's adverse possession counterclaim. Indeed, Robertson testified that the Boat Club had treated the boundary between the McClintic Property and the Hardin Property as the right wheel track of the gravel driveway and that his parents had always told him to stay off the property on the other side of the right wheel track because that was the McClintic Property. In regard to the remainder of the driveway that was on the Hardin Property, the record reveals that the members of the Boat Club knew that McClintic and her predecessors in

---

[6] Additionally, we do not find merit in the Hardins' suggestion that evidence that McClintic and her predecessors in title had shared the use of the driveway with the Boat Club shows that the use was permissive and not adverse. *See Capps v. Abbott*, 897 N.E.2d 984, 989 (Ind. Ct. App. 2008) (explaining that evidence that claimants had used another landowner's drive for ingress and egress for over twenty years indicated that the landowner had knowledge that the claimants were using the drive "in a manner that was adverse to [the landowner's] property interest").

title had used that part of the driveway for ingress and egress purposes since 1966, thereby establishing McClintic's right to use the remainder of the driveway for ingress and egress by means of a prescriptive easement. *See Capps v. Abbott*, 897 N.E.2d 984, 989-90 (Ind. Ct. App. 2008) (affirming the trial court's prescriptive easement judgment for the claimants where the evidence showed that the claimants' and their predecessors in title's use of the drive of a neighboring landowner constituted an open and continuous use of the other's land with knowledge of that owner for the required twenty-year period).

[34] The Hardins' argument regarding the tax payment requirement of adverse possession also fails. They do not dispute that McClintic's evidence that she and her parents had paid property taxes during the relevant period for adverse possession. Instead, they challenge the trial court's determination that McClintic had substantially complied with the tax statute, arguing that McClintic did not have had a good faith belief that she had paid taxes for the gravel driveway. McClintic, however, was not required to make that showing for the entire driveway because she claimed that she owned only a portion of the driveway. The evidence introduced during the bench trial showed that McClintic, her parents, and members of the Boat Club operated with the understanding that the gravel driveway was located on both the McClintic Property and the Hardin Property because the boundary between the two properties was the right wheel track of the driveway. McClintic showed that she and her parents paid the property taxes while having a reasonable and good faith belief that they were paying the taxes for the portion of the driveway on

the McClintic Property, which they and the Boat Club understood to belong to the McClintic Property. Given the inferences reasonably drawn from evidence presented, there was clear and convincing evidence from which the trial court, as finder of fact, could have concluded that McClintic had substantially complied with tax statute. *See Piles v. Gosman*, 851 N.E.2d 1009, 1017 (Ind. Ct. App. 2006) (affirming the trial court's adverse possession judgment for the adverse claimants where the evidence showed that the adverse claimants believed that a fence marked their property line and that they had paid their property taxes with a reasonable and good faith belief that they were paying the taxes on the property up to the fence). Accordingly, the trial court did not err by entering judgment for McClintic on her adverse possession and prescriptive easement counterclaims.[7]

## 2. The Hardins' Claims

[35] The Hardins argue that the trial court erred by denying their claims for injunctive relief based on trespass and for damages based on tortious interference with a contract. Because the Hardins bore the burden of proof regarding their claims and had judgment entered against them, they are appealing from a negative judgment. On appeal, we will not reverse such a judgment unless "the evidence is without conflict and all reasonable inferences

---

[7] Additionally, we reject the Hardins' suggestion that the trial court did not apply the required standard of proof when ruling on McClintic's adverse possession and prescriptive easement counterclaims. The trial court applied the applicable law, as set forth in *Fraley* and *Celebration Worship Ctr.*, which explained that the *Fraley* factors must be proven by clear and convincing evidence.

to be drawn from the evidence lead to a conclusion other than that reached by the trial court." *Garriott*, 878 N.E.2d at 437 (internal quotation marks and citation omitted).

[36] The Hardins acknowledge that their arguments regarding their claims would only be reviewable on appeal if we were to reverse the trial court's judgment in favor of McClintic on her counterclaims. Because we affirm the trial court's judgment in favor of McClintic on her counterclaims, we need not address the Hardins' argument challenge to the trial court's judgment on their claims. Accordingly, we affirm the trial court's judgment.

[37] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.