

FILED

Dec 20 2019, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of Br.B., M.B., and BA.B. (Minor Children), Children in Need of Services, and<br><br>B.B. (Father) and S.B. (Mother),<br><br>*Appellants-Respondents,*<br><br>v.<br><br>Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | December 20, 2019<br><br>Court of Appeals Case No. 19A-JC-1301<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark A. Jones, Judge<br><br>The Honorable Diana J. Burleson, Magistrate<br><br>Trial Court Cause Nos. 49D15-1901-JC-72, -73, -74 |

**Crone, Judge.**

## Case Summary

B.B. ("Father") and his wife, S.B. ("Mother") (collectively "Parents"), appeal the trial court's determination that their three minor children, Br.B., M.B., and BA.B. (collectively "Children"), are children in need of services ("CHINS"). Parents argue that the trial court erred in denying their motion to dismiss for lack of venue and in admitting certain evidence, and that the Indiana Department of Child Services ("DCS") failed to establish that Children's needs are unlikely to be met without coercive court intervention. We affirm.

## Facts and Procedural History

Father and Mother are the parents of three minor children: Br.B., born in 2012, M.B., born in 2013, and BA.B., born in 2016. Mother is also the parent, and Father is the stepparent, of Ma.B., who was born in 2009. In January 2019, DCS received a report of child abuse or neglect regarding all four children. DCS Family Case Manager ("FCM") Nicole Gibney interviewed Parents and the three oldest children and substantiated the report as to Father. All four children were removed from Parents' care and placed with relatives. DCS filed a petition alleging that all four children are CHINS based on Parents' failure to provide them "with a safe, stable, and appropriate living environment free from physical abuse and violence." Appellants' App. Vol. 2 at 75.

[3] After a factfinding hearing, the trial court issued an order in which it determined that all four children are CHINS based on the following relevant findings:[1]

> 17. Br.B. … testified at the trial from another part of the building via telecommunication.
>
> 18. Br.B. does not want to go home because his father is mean. He fed him and his brother worms.
>
> 19. For discipline, Br.B. says his father washes his and his sister's mouth out with soap. His father said that he will kill auntie.
>
> 20. Br.B. wants to go home and live with his mother but not if his father is there.
>
> 21. Br.B.'s father told him that if he told anybody that he will kick their ass.
>
> 22. When asked if he liked vegetables, Br.B. answered that he hates his dad.
>
> 23. Br.B. does not like school because it is right by Father's house.
>
> 24. Ma.B. … testified at the trial from another part of the building via telecommunication.
>
> 25. Ma.B. doesn't want to see Father because he is dangerous and tried to hurt Ma.B.

---

[1] We have replaced references to the parties' names with the foregoing designations.

26. Ma.B. elaborated that Father, his stepfather, would not feed him when he said he was hungry, and sent him to his room.

27. According to Ma.B., Father disciplines him with a belt, ruler and paddle.

28. One time Ma.B. was at home watching TV, and Father hit him with a belt and left marks on him. The next day Father hit him with a ruler, switch, and a paddle. Father said that if Ma.B. told anybody he was going to kill him.

29. Ma.B. wants to go home but only if Father is not there. He does not love Father because he is mean to Ma.B.

30. Spencer Ryan was assigned to work with Father on home based case management and Father Engagement.

31. Father told Mr. Ryan that these stories from the children were fabrications by his wife's mother due to her wanting money. He said that grandmother was changing their appearance, buying them toys and bribing them.

32. Father disciplines the children using foods. He bases the discipline on what a particular child does not like, for example, one doesn't like sweets and another doesn't like vegetables.

33. Mr. Ryan has concerns about Father's modes of discipline and recommends services to help him work on the way he disciplines the children.

34. Father disciplines the children by slapping their fingers, and hands; making them eat certain foods.

35. Father was authorized by the Court to have parenting time with his children, but not Ma.B. He refused the parenting time because it did not include Ma.B.

36. Parents' home has a trespassing sign, cameras, multiple screens showing camera shots, there is a lot of renovation at the home – exposed wires, multiple heaters, and the house smelled of sawdust.

37. A home based therapist, Ashlyn Weals, has been working with the children since January 22, 2019. She has had 6 meetings with the children. At the first session all of the children were together, and after that she met with them individually.

38. Ms. Weals met with the children at school.

….

40. The statements made to Ms. Weals show the extent of the children's trauma. The children talk about fear, trauma, they all have the same statement of what they are fearful of, and they have a lack of coping skills.

41. Ma.B. and Br.B. expressed that they are afraid to return home (they are currently placed with their maternal grandmother), they will be punished – extension cord, holding cooler filled with water, and picked up by ears and neck.

….

44. Ms. Weals' therapeutic recommendations for the children: they have a high need for ongoing therapy to build up coping skills, recognize and verbalize feelings, and process different things going on in their lives.

45. Regarding parenting time, Ms. Weals recommends supervised time with Father. Ma.B. feels fear and discomfort with Father. The children speak highly of their mother. Br.B. and Ma.B. want to live with their mother but not with Father. There are no concerns with mother alone, the concern is that the parents live together.

46. Ma.B. said that testifying in court made him sad, mad and uncomfortable. He has had stomach aches and headaches. Yet, Father wanted the children to testify, to look him in his eyes and tell him they didn't love him and they were lying.

47. Father thinks that this situation with his children arose due to a disagreement about money with the maternal grandmother …. About 5 o[r] 6 years ago when Father and Mother were dating, Mother would allow [the maternal grandmother] to claim Ma.B. as an exemption on [the maternal grandmother's] taxes. The last time [she] claimed Ma.B. as an exemption on her taxes was in 2014. Father does not agree with this arrangement and around Thanksgiving last year he let her know that he did not agree. Father told [her] that he would not let the children go over to her house again. Father said there were "threats thrown".

48. Father disagrees with [the maternal grandmother] buying the children things such as tablets, Jordans, cell phones, name brand clothes. The Parents cannot afford to buy these things.

49. Father is upset that [the maternal grandmother] cuts the children's hair and promises them things. He thinks the children have been bribed and coerced into saying things about him.

50. Father thinks the children need therapy but neither he nor Mother [has] taken steps for them to receive therapy.

51. The children's physical or mental condition is seriously endangered due to Father's actions which have caused trauma and fear in the children, and the children need therapy that they have not received prior to this case being filed. Additionally, Mother has neglected to protect the children from Father's actions.

Appealed Order at 1-3. The trial court also issued a dispositional decree and a parental participation order continuing the children's placement in relative care and requiring Parents to participate in certain programs.

[4]     Parents now appeal the CHINS determinations as to Children, but not as to Ma.B. Additional facts will be provided below.

## Discussion and Decision

### Section 1 – The trial court did not clearly err in denying Parents' motion to dismiss for lack of venue.

[5]     Indiana Code Section 31-32-7-1 states, "If a child is alleged to be a delinquent child or a child in need of services, proceedings under the juvenile law may be commenced in the county: (1) where the child resides; (2) where the act occurred; or (3) where the condition exists." This statute addresses venue, which has been defined as "[t]he proper or a possible place for a lawsuit to proceed, [usually] because the place has some connection either with the events that gave rise to the lawsuit or with the plaintiff or defendant." BLACK'S LAW DICTIONARY (11th ed. 2019).

[6]     After DCS rested its case at the factfinding hearing, Parents moved for involuntary dismissal pursuant to Indiana Trial Rule 41(B) on the basis that DCS had failed to prove venue, i.e., that the children resided, the acts occurred,

or the conditions existed in Marion County.[2]  The trial court summarily denied the motion.  Parents presented their case, DCS called a rebuttal witness, and Parents renewed their motion to dismiss.  The trial court took the matter under advisement but never issued a ruling, so the motion was deemed denied pursuant to Indiana Trial Rule 53.4(B).[3]

[7]     On appeal, Parents argue that the trial court erred in denying their motion to dismiss.  We review that ruling under the clearly erroneous standard.  *In re M.D.*, 906 N.E.2d 931, 932 (Ind. Ct. App. 2009), *trans. denied*.  A ruling is clearly erroneous when a "review of the record leaves us with a firm conviction that a mistake has been made."  *Hardin v. McClintic*, 125 N.E.3d 643, 651 (Ind. Ct. App. 2019).

[8]     In asserting that DCS failed to prove venue, Parents rely on *Baugh v. State*, 801 N.E.2d 629 (Ind. 2004), which reads in pertinent part,

> The right to be tried in the county in which an offense was committed is a constitutional and a statutory right.  Ind. Const. Art. I, § 13; Ind. Code § 35-32-2-1(a) (2000); *Alkhalidi v. State*, 753 N.E.2d 625, 628 (Ind. 2001).  Venue is not an element of the offense.  *Id.*  Accordingly, although the State is required to prove

---

[2] Trial Rule 41(B) states in pertinent part,

> After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief.  The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

[3] This rule provides that a repetitive motion is deemed denied unless it is ruled upon within five days.

> venue, it may be established by a preponderance of the evidence and need not be proven beyond a reasonable doubt. *Id.*

*Id.* at 631. According to Parents, DCS presented no direct or circumstantial evidence "as to where the allegations occurred, where the children resided, or where the families' circumstances existed" and therefore "did not prove that Marion County was the proper venue for this matter." Appellants' Br. at 25.[4]

[9] We find Parents' reliance on *Baugh* misplaced. CHINS proceedings are not criminal proceedings, so Parents have no constitutional right to have their case tried in any particular county. *See Matter of Ma.H.*, 134 N.E.3d 41, 46 (Ind. 2019) (noting that CHINS proceedings are "non-criminal"); IND. CONST. art. 1, § 13 ("In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed ….").[5] Moreover, Section 31-32-7-1 does not state, or even suggest, that DCS is required to prove venue in a CHINS proceeding, and the statute's venue provisions are permissive, not mandatory. *See Dermatology Assocs., P.C. v. White*, 67 N.E.3d 1173, 1179 (Ind. Ct. App. 2017) ("[W]e will not read into the statute that which is not expressed, so it is just as important to recognize what a statute does not say as it is to recognize what it does say."); *Romine v. Gagle*, 782

---

[4] In stating that venue may be established by circumstantial evidence, Parents cite an unpublished memorandum decision from another panel of this Court in violation of Indiana Appellate Rule 65(D). Appellants' Br. at 21.

[5] Indiana Code Section 35-32-2-1(a), also cited in *Baugh*, is merely a codification of this constitutional venue requirement ("Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law.").

N.E.2d 369, 380 (Ind. Ct. App. 2003) ("The term 'may' in a statute ordinarily implies a permissive condition and a grant of discretion."), *trans. denied.* In other words, a CHINS proceeding *may* be commenced (and tried) in a county where the child resides, the act occurred, or the condition exists, but it does not *have* to be.[6] Because there is no constitutional or statutory requirement that DCS prove venue in a CHINS proceeding, we conclude that the trial court did not clearly err in denying Parents' motion to dismiss.

## Section 2 –Parents have failed to establish that they are entitled to reversal based on the admission of certain evidence.

[10] Parents also contend that the trial court violated their due process rights by admitting testimony regarding Father's sex offender status and the conditions of Parents' home, which they characterize as evidence of unpled allegations that was introduced without notice at the factfinding hearing over their objection.

---

[6] Indiana Code Section 31-32-1-3 provides that in juvenile court cases not "subject to" delinquency allegations or criminal charges, "the Indiana Rules of Trial Procedure apply in all matters not covered by the juvenile law." Section 31-32-7-1's permissive venue provisions are consistent with Indiana Trial Rule 75(A), which reads in relevant part,

> Any case may be venued, commenced and decided in any court in any county, except, that upon the filing of a pleading or a motion to dismiss allowed by Rule 12(B)(3), the court, from allegations of the complaint or after hearing evidence thereon or considering affidavits or documentary evidence filed with the motion or in opposition to it, shall order the case transferred to a county or court selected by the party first properly filing such motion or pleading if the court determines that the county or court where the action was filed does not meet preferred venue requirements or is not authorized to decide the case and that the court or county selected has preferred venue and is authorized to decide the case.

Section 31-32-7-2 provides that a change of venue from the county in a juvenile proceeding "may not be granted except under" Section 31-32-7-3, which states, "(a) Upon: (1) the juvenile court's own motion; (2) the motion of a child; or (3) the motion of the child's parent, guardian, or custodian; the juvenile court may assign a case to a juvenile court in the county of a child's residence at any time before the dispositional hearing." Thus, if Children actually did not reside in Marion County and Parents wanted a change of venue on that basis, it was their burden to file a motion to make that change.

DCS characterizes the issue as a garden-variety admissibility of evidence question. Indiana Appellate Rule 66(A) states,

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

The trial court's CHINS order does not even mention Father's sex offender status, and although the order mentions the conditions of Parents' home in passing, those conditions are not cited as a basis for the trial court's CHINS finding. Regardless of how one frames this issue, we find no basis for reversal.

## Section 3 – Parents have failed to establish that DCS did not carry its burden on the issue of coercive court intervention.

DCS alleged that Children are CHINS pursuant to Indiana Code Section 31-34-1-1, which provides that a child is a CHINS if, before the child becomes eighteen years of age,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
> > (A) when the parent, guardian, or custodian is financially able to do so; or
> >
> > (B) due to the failure, refusal, or inability of the parent,

guardian, or custodian to seek financial or other reasonable means to do so; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

"In a CHINS proceeding, DCS bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS." *In re A.M.*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied*.[7]

[12] "The purpose of a CHINS adjudication is to protect children, not to punish parents." *K.A.H. v. Ind. Dep't of Child Servs.*, 119 N.E.3d 1115, 1120 (Ind. Ct. App. 2019) (citation and alterations omitted). "A CHINS adjudication is not a determination of parental fault but rather is a determination that a child is in need of services and is unlikely to receive those services without intervention of the court." *Id.* "The intrusion of a CHINS judgment … must be reserved for families who *cannot* meet those needs without coercion—not those who merely have *difficulty* doing so." *In re S.D.*, 2 N.E.3d at 1283, 1285 (Ind. 2014).

---

[7] DCS also alleged that two of the Children are CHINS pursuant to Section 31-34-1-2, but the trial court's order does not specify a statute, and both Parents and DCS premise their arguments on Section 31-34-1-1.

[13] Parents do not challenge the trial court's finding that Children's physical or mental condition is seriously endangered and that they need therapy to cope with the "trauma and fear" caused by Father's actions and Mother's failure to protect them from those actions. Appealed Order at 3. But they do assert that DCS failed to prove that this need is unlikely to be met without coercive court intervention. In reviewing a trial court's CHINS determination, we neither reweigh evidence nor judge witness credibility. *S.D.*, 2 N.E.3d at 1286. Instead, we consider only the evidence supporting the trial court's decision and the reasonable inferences to be drawn therefrom. *Id.* No statute expressly requires formal findings in a CHINS factfinding order, *id.*, and the trial court here entered its findings and conclusions sua sponte. Parents do not challenge any of the findings, and thus they stand as proven. *Coles v. McDaniel*, 117 N.E.3d 573, 576 (Ind. Ct. App. 2018). Because the trial court did not make a finding regarding the need for coercive court intervention, we review that issue pursuant to the general judgment standard, under which we will affirm a judgment if it can be sustained on any legal theory supported by the evidence. *S.D.*, 2 N.E.3d at 1287.

[14] Parents' lengthy argument boils down to their contention that no coercive court intervention is required because they "voluntarily participated in services prior to the trial court's dispositional decree requiring them to do so." Appellants' Br. at 37. But this contention disregards the unchallenged finding that Parents did not take steps for Children to receive the therapy they need during the

pendency of the CHINS proceeding. At the factfinding hearing, Father offered the following rationale for this:

> Q …. Prior to this case starting, you didn't have any reason to believe the kids were in need of therapy. Right?
>
> A That's correct.
>
> Q They [DCS] had not made a bunch of allegations that you believed to be untrue at that point in time. Correct?
>
> A That's correct.
>
> Q Now, that this case is opened it might be more apparent that they might be in need of therapy. Right?
>
> A Yes, sir.
>
> Q Okay. So, the mere fact that you didn't get therapy for them before doesn't mean that you won't get it for them in the future. Right?
>
> A That's right.

Tr. Vol. 2 at 239-40. The trial court was entitled to disbelieve this self-serving testimony. Indeed, Father's explanation falls far short of an unequivocal commitment to get therapy for Children, especially in light of his attempts to blame their trauma and fear on manipulation by their maternal grandmother, as well as his desire to have Children testify so that he could "look him in his eyes and tell him they didn't love him and they were lying." Appealed Order at 3.

[15]     In sum, Parents have failed to establish that DCS did not carry its burden on the issue of coercive court intervention.  Therefore, we affirm.

[16]     Affirmed.

May, J., and Pyle, J., concur.